## A08A0770. SMITH v. THE STATE.
### (662 SE2d 176)

ANDREWS, Judge.

Shawndell Antwon Smith appeals from the denial of his motion for new trial following his conviction by a jury of possession of cocaine with intent to distribute (OCGA § 16-13-30 (b)), possession of cocaine with intent to distribute within 1,000 feet of a housing project (OCGA § 16-13-32.5 (b)), and possession of cocaine with intent to distribute within 1,000 feet of a public school (OCGA § 16-13-32.4 (a)).

1. We first consider Smith's second enumeration of error, challenging the sufficiency of the evidence regarding intent to distribute.

On appeal from a criminal conviction, we view the evidence in a light favorable to the verdict, and Smith no longer enjoys a presumption of innocence. See *McGee v. State*, 287 Ga. App. 460 (651 SE2d 546) (2007). We neither weigh the evidence nor resolve issues of witness credibility, but determine only whether the evidence was sufficient to allow a rational trier of fact to find the accused guilty beyond a reasonable doubt. See id.

So viewed, the evidence here was that John Uppole, an investigator with the South Georgia Drug Task Force, was conducting surveillance of Smith's trailer at Singleton's Trailer Park in Pelham on May 12, 2006. He began the surveillance around 6:30 a.m., positioning himself in a trailer across the driveway and approximately 25 yards from Smith's trailer.

Uppole observed people come to Smith's trailer by vehicle, bicycle, and on foot during the morning and early afternoon. They would go behind Smith's trailer, stay a minute or two, and then leave. At 1:30 p.m. and 1:45 p.m., Uppole observed two hand-to-hand transactions. At 1:30 p.m., Uppole saw a person arrive in a white Buick four-door car. This was the third time Uppole had seen this car that day. The driver got out of the car and Uppole saw a hand-to-hand exchange between the two men, although he could not tell what was exchanged. Approximately three minutes after this car left Smith's trailer, it was stopped by other officers, but no crack cocaine was found. At 1:45 p.m., Uppole saw Smith meet his neighbor, Reese, between their two trailers. After Reese and Smith appeared to exchange something hand-to-hand, Reese went back into his trailer and Uppole saw Smith place something in the grass. No contraband was found on Reese later. Uppole explained that, based on his years of experience working drug cases, the conduct he witnessed between

Smith and the driver of the white Buick was hand-to-hand exchanges of drugs and money.

Uppole then contacted Investigator Reggie Feagin and verbally directed him to the area where he had seen Smith place something in the grass. Uppole maintained surveillance of the area from the time he saw Smith place something in the grass until Feagin arrived and saw no one else there. Upon arriving and following Uppole's directions, Feagin found a two-inch by two-inch square of tinfoil in the grass. Inside the tinfoil was a baggie containing several small pieces of what appeared to be crack cocaine. Feagin maintained possession of the package until approximately 45 minutes later when he turned it over to Uppole. Uppole kept the package in his evidence locker until he delivered it to the Georgia Bureau of Investigation laboratory seven days later. The package was received at the laboratory on May 19, 2006 by chemist Davis. Although the package had not been initialed by Uppole, which was standard procedure, the package was intact and no tampering appeared to have occurred. The contents of the package weighed 1.66 grams and tested positive for cocaine. According to Uppole, the amount of cocaine, broken into several small pieces, the total weight over one gram worth $166, the traffic to and from Smith's trailer, and the hand-to-hand exchanges he saw indicated to him that Smith was distributing the cocaine and not holding it for personal use.

The trailer park was located within 1,000 feet of the James Allen Eubanks Homes, run by the Pelham Housing Authority and within 1,000 feet of Pelham Elementary School.

We find the evidence sufficient to support Smith's conviction of possession with the intent to distribute. See *Tran v. State*, 289 Ga. App. 89, 90 (1) (656 SE2d 229) (2008); *Daniels v. State*, 278 Ga. App. 263, 266 (2) (628 SE2d 684) (2006); *Marshall v. State*, 273 Ga. App. 17, 19 (2) (614 SE2d 169) (2005); *Burse v. State*, 232 Ga. App. 729, 730 (1) (503 SE2d 638) (1998).

2. Smith's first enumeration of error, that the trial court erred in not sua sponte giving the jury an instruction on the lesser included charge of simple possession, is without merit. *Tran v. State*, supra at 90 (2).

3. Finally, Smith contends that the trial court erred in allowing into evidence State's Exhibits 1 and 2, the tinfoil and the baggie containing the crack cocaine, because the chain of custody was compromised and the officers did not follow lab protocol by failing to initial the evidence.

> To show a chain of custody adequate to preserve the identity of fungible evidence, the [s]tate must prove with reasonable certainty that the evidence is the same as that seized and

that there has been no tampering or substitution. The [s]tate is not required to foreclose every possibility of tampering; it need only show reasonable assurance of the identity of the evidence. We review the trial court's decision on the adequacy of the chain-of-custody evidence under an abuse-of-discretion standard.

(Citations, punctuation and footnotes omitted.) *Maldonado v. State*, 268 Ga. App. 691-692 (1) (603 SE2d 58) (2004). See also *Stringer v. State*, 285 Ga. App. 599, 603 (2) (647 SE2d 310) (2007).

"[I]n proving chain of custody, the state is not required to show that the substance was guarded each minute it is in one's custody." (Punctuation and footnote omitted.) *Dempsey v. State*, 265 Ga. App. 175, 177 (3) (593 SE2d 362) (2004). "The [s]tate need only show with reasonable certainty that the substance tested is the same as that seized, with no tampering or substitution." (Citations and footnote omitted.) *Maldonado*, supra at 694 (1).

The State's evidence showed the chain of custody, and the trial court did not err in denying Smith's objection. Smith has cited no authority, and we are aware of none, that deviating from laboratory protocol renders evidence inadmissible.

*Judgment affirmed. Ruffin, P. J., and Bernes, J., concur.*

DECIDED MAY 1, 2008.

*Farkas & Ledford, Leonard Farkas*, for appellant.

*Joseph K. Mulholland, District Attorney, Michael T. Garrett, Assistant District Attorney*, for appellee.